FILED
2020 Jul-07  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRACI BUTLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:18-CV-01069-CLM** |
| | ) | |
| **CITY OF HOOVER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Traci Butler alleges that her former employer, Defendant City of Hoover, impermissibly retaliated against her for taking leave under the Family Medical Leave Act ("FMLA") in three ways: (1) by taking away some of Butler's duties, then (2) reassigning her to another location, and then (3) making her new assignment so intolerable that she had to resign.

Now that discovery has concluded, Hoover argues that it is entitled to summary judgment because (among other reasons) the undisputed facts show that it had legitimate non-discriminatory reasons for shifting Butler's duties and that Butler ultimately resigned due to personal issues—not because her working conditions were intolerable. *See* Docs. 16 (motion), 18 (supporting brief).

The court agrees; Hoover is entitled to summary judgment on all claims.

# BACKGROUND

## A. Undisputed Facts

1. Pre-FMLA: Butler began working for the City of Hoover in 2004. When 2016 began, Butler's official position was "Administrative Services Supervisor," and she worked at city hall as the Administrative Assistant to the city's Executive Director, Allen Pate. Butler's typical day involved answering Pate's phone calls, checking his emails, scheduling meetings, working on paperwork related to construction paperwork, and working on matters related to the Department of Housing and Urban Development ("HUD").

At the time (2016), Hoover was in the midst of a construction/renovation project at the Hoover Met Complex. The largest component of this project was construction of the Finley Center, a large sports and events arena.

Butler enjoyed construction-related projects and talked to multiple persons, including Pate, about the possibility of creating for her a position titled "Project Coordinator," which would allow Butler to handle all capital construction for the City. No one agreed to create this position for Pate, and it was never created.

Pate was transferred from City Hall to the Hoover Met in early 2016, however, due to a conflict between Pate and another employee at City Hall. Pate retained her "Administrative Services Supervisor" title and received the same pay. Pate also took on more work related to construction of the Finley Center.

In June 2016, this move led to Pate's formal transfer from the city's Operations Department to the Parks and Recreation Department. Pate's job title and pay still did not change. Her supervisor did change, however; Pate now worked for Lance Weems and Tim Westhoven, the project manager for the Finley Center construction project.

Much like her days at City Hall, Butler's typical day at the Hoover Met involved administrative duties such as approving the Department's purchase requisitions, going through contractors' invoices, and helping out with the RV park when her co-worker was not on duty. Unlike her days at City Hall, Butler spent most of her time on her construction-administration duties. As Butler testified during her deposition, "handling all the construction paperwork for the Finley Center was a big project"; so big, in fact, that her Finley Center project duties "became a full-time job" that needed daily attention. Doc. 17-1 at 15-16, 27.

2. <u>Reassigned Duties</u>:  Butler requested FMLA leave on August 30, 2016, to care for her ailing mother. Hoover approved FMLA leave on an intermittent basis from August 30, 2016, through February 28, 2017.

Within a week of Butler's FMLA request, Westhoven and Pate informed Butler that she would not be handling the Finley Center construction paperwork while on leave because the city needed someone present on site to perform those duties. Another city employee, Elenie Counts, took over the Finley Center

paperwork until the Finley Center project was completed. Counts then returned to City Hall to be the administrative assistant to the City Administrator.

Butler worked only 10 of the 61 work days during the first three months of her FMLA leave—*i.e.*, September, October, and November 2016.

3. <u>Transfer to Senior Center</u>:  Craig Moss was the director of the Parks and Rec Department at the time. The Hoover Senior Center needed an administrative assistant, and Moss allowed the Senior Center's director, Dana Stewart, to choose between Butler and another city employee. Stewart chose Butler because Stewart had worked with Butler and believed her personality and professional skill set was a good fit for the position.

On November 30, 2016, Moss told Butler that she was being transferred from the Hoover Met to the Hoover Senior Center. Like Butler's transfer from City Hall to the Hoover Met, Butler's job title, hours, and pay did not change when she moved to the Senior Center. While Butler would no longer handle construction paperwork, her duties would again involve administrative functions such as the handling of requisitions, work orders, purchase orders and working with various organizations.

Butler's first day at the Senior Center was December 5, 2016. Her typical work day consisted of administrative duties like helping open the facility, making coffee, taking notes, making copies, printing documents, ordering supplies, working

with spreadsheets, and helping with events. Butler also worked in the kitchen and helped seniors.

Butler was still on FMLA leave during her first three months at the Senior Center (*i.e.*, December 2016 through February 2017). During that period, Butler worked 29 full days and 6 partial days out of 59 work days. This means that Butler took 69 full days and 6 partial days off during her FMLA period.

Butler's FMLA leave expired at the end of February 2017. But her absences continued. Butler missed 55 entire work days, and more than half of five additional work days, over the next 105 work days. Butler gave various reasons for the absences, including her mother's continuing ailment, Butler's own health issues, panic attacks, and her pending divorce.

4. Resignation: On July 19, 2017, Hoover's HR Director sent Butler a letter that stated that Butler had exhausted all of her FMLA leave, her paid annual leave, and her paid sick leave. As a result, Butler's absences were now unpaid, and Butler needed to request a leave of absence by July 28, 2017, if she wished to continue being absent and keep her employment. The letter informed Butler that the failure to make the request by July 28th would lead to future absences being considered Unexcused Leave and a voluntary resignation after three consecutive work days.

Rather than seek a Leave of Absence, Butler resigned on July 28th. In an email to Craig Moss, Butler stated that her resignation was "due to several personal and

work related factors." On the same day, Butler sent another city employee, Mary Hind, an email that stated that she was resigning because she needed to withdraw money from her retirement account.

Butler has not been employed since she resigned in July 2017. She stays at home because of her health problems, and she has applied for disability or SSI benefits. Butler testified at her deposition that, even if the city offered her a job, she would be unable to work due to her health.

**B.  The Lawsuit**

Butler filed this lawsuit alleging that Hoover retaliated against her for taking FMLA leave. Doc. 1. Because the FMLA is a federal statute, this court has federal question jurisdiction. *See* 28 U.S.C. § 1331. Venue is proper in the Northern District of Alabama because the events leading to this lawsuit occurred in this district. 28 U.S.C. § 1391(b)(2). Discovery is complete, and the City of Hoover seeks summary judgment. Doc. 16.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the court must draw

all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000).

## ANALYSIS

While Butler pleads only one count in her complaint, "Retaliation under the Family and Medical Leave Act," Doc. 1 at 6-7, she presents three distinct theories of retaliation based on three distinct changes in her employment:

| Legal Theory | Event |
|---|---|
| Removal of Duties | Finley Center Project Duties given to E. Counts |
| Disadvantageous Transfer | Butler transferred to Senior Center |
| Constructive Discharge | Butler resigns employment |

Butler has no direct evidence that Hoover's retaliatory intent triggered any of these events. Thus, the court reviews each of the three theories under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).

*McDonnell Douglas* sets forth a three-step process: (1) Butler must establish a prima facie case of retaliation; if she does, then (2) Hoover must articulate some legitimate non-retaliatory reason for taking the adverse action; and if it does, then (3) Butler must show that Hoover's stated reason(s) is merely pretext, and that Hoover was motivated by the retaliatory purpose established at Step 1. The burden

here is high: "Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing that [her] employer's actions were motivated by an impermissibly retaliatory or discriminatory animus." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267-68 (11th Cir. 2008). The court applies *McDonnell Douglas* to Butler's three theories in chronological order.

## I.    Removal of Duties (September 2016)

Butler's first argument is that, about a week after Butler requested FMLA leave, Hoover retaliated against her by giving her Finley Center construction project duties to Elenie Counts. This argument fails for three distinct reasons.

### A. Prima Facie Case: No Adverse Action

To establish a prima face case of retaliation due to removal of duties, Butler must show that (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by the removal of her duties; and, (3) there is a causal connection between Butler's FMLA request and the removal of her duties. *Strickland*, 239 F.3d at 1207. There is no question that Butler had a protected right to take FMLA leave (Element #1). And while Hoover argues that its decision to transfer duties was not causally connected to Butler's leave request, the court finds that a reasonable juror could determine that Hoover would not have transferred Butler's construction-related duties to Elenie Counts but for Butler's request for FMLA leave (Element #3).

So the only question when it comes to Butler's prima facie case is whether a reasonable juror could find that Butler was adversely affected when Hoover gave the construction-related duties to Counts. Importantly, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001).

While Butler may have subjectively rued the reduction of her duties, because she personally enjoyed construction-related projects, Butler fails to offer evidence that a reasonable person under the circumstances would have been materially affected by the reduction of duties. The only change 'suffered' by Butler was a removal of duties that required Butler's daily attention so that Hoover could continue the Finley Center construction project while Butler spent time with her ailing mother. Butler otherwise retained her job title, her pay, and her benefits.

The court finds that Butler's evidence that her duties were reassigned, but her job title and pay remained the same, cannot prove a materially adverse action under the FMLA. To the contrary, Hoover's actions comport with FMLA regulations that allow employers to transfer or reassign an employee's duties during intermittent leave, as long as the employee receives equivalent pay and benefits. *See* 29 CFR § 825.204.

The Eleventh Circuit rejected a similar claim of adverse action, albeit in an unpublished opinion, in *Hyde v. K.B. Home, Inc.*, 355 Fed. App'x 266 (11th Cir. 2009). When Crystal Hyde sought leave due to her pregnancy, her employer reduced and reassigned some of her duties in preparation for her absence. Hyde's job title and salary did not change. Hyde sued, and the Eleventh Circuit affirmed the granting of summary judgment for the employer, finding that the reassignment of Hyde's duties in preparation for leave—when unaccompanied by a change in job title or reduction in pay—did not constitute an adverse employment action. *Id.* at 272-73.

Given *Hyde* and 29 CFR § 825.204, the court finds that Butler cannot establish a prima facie case of FMLA retaliation because there was no adverse action.

### B. No Pretext / Retaliatory Animus

Assuming that Butler did suffer an adverse action, and thus could establish a prima facie case, the court finds that Hoover has offered sufficient evidence of a nondiscriminatory reason to transfer Butler's duties to Counts—*i.e.*, Hoover needed someone on site during the day to manage the construction-related paperwork.

This puts the burden back on Butler to establish pretext. In other words, Butler must provide evidence that would allow a reasonable juror to find that Hoover gave the construction-related duties to Counts based on "an impermissibly retaliatory or discriminatory animus" toward Butler, *Martin*, 543 F.3d at 1267-68, rather than Hoover's need for someone on site during the work days while Butler was on leave.

10

Butler does not dispute that Westhoven and Pate told her that she would no longer be handling the Finley Center construction paperwork because Hoover "needed someone present on a daily basis when others were present at work to perform those duties." Doc. 18 at 9 (Undisputed Fact #20). Instead, Butler argues that their stated need for an on-site worker is pretext because Butler told Westhoven that she could "handle the work by working late hours and conducting business remotely by phone and computer," and Hoover employees work remotely "all the time." Doc. 21 at 24-25.

Hoover responds that, while some employees may work remotely depending on their specific duties, Butler offers no evidence that construction-administration work "could be done after hours, on weekends, or remotely." Doc. 22 at 5.  As Hoover points out, Butler testified that the Finley Center project "became a full-time job" that took up most of her 40-hour work week, and she does not dispute that the job needed "daily attention." Doc. 18 at 7 (Undisputed Fact #13). As Hoover puts it, "it is not plausible that [Butler] could have maintained that work while taking significant amounts of intermittent FMLA leave." Doc. 22 at 5.

The court agrees with Hoover for two reasons. First, Butler offers no evidence that would allow a reasonable juror to find that a person could have handled the Finley Center project from home at night while caring for an ailing family member. Second, even if it were possible for Butler to do the job from home, Butler offers no

11

evidence that would allow a reasonable juror to find that Hoover refused to let her work from home at night and on weekends based on a retaliatory animus, rather than a preference to have their administrative assistant on-site, as construction was happening, to handle whatever immediate need might arise. Again, FMLA regulations allow employers to make such decisions, *see* 29 CFR § 825.204, and all of the evidence points to Hoover acting out of need, not out of retaliatory animus.

### C. No Damages

Finally, even if Butler could establish a prima facie case and pretext, a trial on this claim would be pointless because there is no relief that could be granted.

Hoover did not reduce Butler's salary before she resigned. So, as her counsel admitted during oral argument, Butler does not seek monetary damages for her reassignment of duties claim. Tr. at 25. Instead, counsel told the court that, as relief, Butler would "ask to be reinstated in order to then have the opportunity to say: I don't want this job." Tr. at 26.

The court noted that Butler testified during her deposition that she is no longer able to work for Hoover due to her health and she did not dispute Hoover's assertion that she would not take the job back if offered,[1] *see* Doc. 17-1 at 8, 13, 14; Doc. 18 at 18 (Undisputed Fact #46), which led to the following exchange:

---

[1] Counsel confirmed that Butler's application for disability or SSI benefits is pending.

| THE COURT: | So what then is the point? |
|---|---|
| MR. CLARK: | The point is that they discharge her—not discharge her. |
| THE COURT: | No. What is the point of reinstating her? |
| MR. CLARK: | So that she can make a choice and say, I want that job or don't want that job. |

Tr. at 28. It is undisputed that Butler would say, "I don't want that job"—and, indeed, could not take the job—if the court ordered reinstatement as equitable relief. Thus, empaneling a jury on this claim would be a waste of time and resources.

\* \* \*

For these reasons, individually and collectively, Butler's claim of retaliation by reassignment of duties is due to be dismissed.

## II.    Disadvantageous Transfer (December 2019)

Butler's second argument is that, around three months into her FMLA leave, Hoover retaliated against her by transferring her from the Hoover Met to the Hoover Senior Center. This argument fails for two reasons.

### A. Prima Facie Case: No Adverse Action

Butler must establish three elements to make a prima facie case of retaliation by disadvantageous transfer: (1) Butler had a right to take FMLA leave; (2) Butler suffered an adverse action when Hoover reassigned her to the Senior Center; and, (3) Hoover's decision to reassign Butler was causally connected to Butler's taking FMLA leave. It is undisputed that Butler meets the first element, and the court

needn't reach the third element (causal connection between Butler's FMLA leave and her reassignment) because Butler cannot establish the second.

The "adverse action" requirement is governed by the same rule as before: the alleged adversity must meet a threshold level of materiality and Butler's "subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1238.

It is undisputed that, when Hoover moved Butler to the Senior Center, Butler retained the same title, salary, and hours as she had at City Hall and the Hoover Met. Doc. 18 at 13 (Undisputed Fact #33). It is also undisputed that Butler's duties "would be the same or similar as her previous job assignment (*i.e.* the Finley Center/Hoover Met) regarding entering requisitions, purchase orders (POs), and work orders[.]" *Id.* at 14 (Undisputed Fact #34).

Butler argues the following about the materiality of her move:

[T]here is no question that the change in job duties and responsibilities was material. Ms. Butler began taking on construction administration duties while she was Mr. Pate's Administrative Assistant [at City Hall]. She then was moved to the Hoover Met where those construction duties took up a majority of her time. Despite being given the highest possible performance review in May of 2016…by September, after taking Intermittent FMLA leave beginning August 31, 2016, Ms. Butler was relieved of those duties, leaving her little to do at the Hoover Met. She was then transferred to the Senior Center where she performed clerical duties, made copies, ordered office supplies, and worked in food service. This reassignment of duties certainly creates a fact question as

to whether her reassignment to the Senior Center was a materially
adverse employment action.

Doc. 21 at 15-16 (citations omitted). In other words, Butler argues that the material

adverse action was the reduction of her construction-related administrative duties

and an increase in non-construction-related paperwork and kitchen duty.

The court finds that this alleged adversity fails to meet the threshold level of

materiality for three reasons. First, it is purely subjective. The court accepts that

Butler preferred construction-related administrative work to senior-related

administrative work. But Butler's personal preference is beside the point. *See Davis*,

245 F.3d at 1238 ("the employee's subjective view of the significance and adversity

of the employer's action is not controlling"). The question is whether a reasonable

person would find that performing essentially the same administrative tasks, with

the same job title, for the same pay, during the same hours—just for a different

department—was materially adverse. By offering evidence and argument that

focuses solely on her *subjective* preference; Butler offers no evidence that would

establish the requisite *objective* third-party standard.

Second, Butler's reassignment did not materially impact her job prospects

with the city. Butler was not demoted; she was not reprimanded; and she did not

miss out on a promotion opportunity. Butler admits that she "does not know where

she would have worked after the completion of the Finley Center if she had stayed

there until completion." Doc. 18 at 14 (Undisputed Fact #35). The "Project

Coordinator" position that Butler wanted was never created, and her replacement at the Hoover Met (Elenie Counts) moved back to city hall when the Finley Center project ended. Doc. 18 at 10 (Undisputed Fact #22). Because Butler offers no evidence that moving to the Senior Center foreclosed some advancement opportunity that would have existed if Butler had remained at the Hoover Met, no reasonable juror could find that Butler's reassignment to the Senior Center was materially adverse.

Third, FMLA regulations allow employers to transfer employees to "alternative positions" during periods of intermittent leave, 29 CFR § 825.204(a), as long as the alternative position offers "equivalent pay and benefits." 29 CFR § 825.204(c). The regulations go on to state that "the alternative position for these purposes does not have to have equivalent duties." *Id.* In other words, the change that Butler deems materially adverse—*i.e.*, non-equivalent duties—has been deemed permissible by the Department of Labor. While the regulations are not binding, the court is wary of holding Hoover liable for taking an action that conforms to them.

For these reasons, individually and collectively, the court finds that Butler cannot establish a prima facie case of retaliation by disadvantageous transfer.

## B. No Damages

Butler acknowledged during oral argument that she does not seek monetary damages on her pre-resignation claims; she only seeks an order of reinstatement that

would allow her to "make a choice and say, I want that job or don't want that job." Tr. at 28. It is undisputed that Butler would not and could not take the job if the court ordered reinstatement as relief. Doc. 18 at 18 (Undisputed Fact #46: "Butler said even if offered, she would not be able to come back to work at Hoover due to her health[.]"). Thus, even if Butler could establish a prima facie case and pretext, empaneling a jury on this claim would be a waste of time and resources.

## III.   Constructive Discharge

Butler's final argument is that Hoover retaliated against her by forcing her to resign—*i.e.*, "constructive discharge." Unlike her previous two arguments, success on a constructive discharge claim would lead to monetary damages. So the court's discussion is limited solely to whether Butler has offered evidence that would allow a reasonable juror to find that she was constructively discharged.

Constructive discharge occurs when "an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (citation omitted). This too is an objective test: "In assessing constructive discharge claims, we do not consider a plaintiff's subjective feelings about his employer's actions. Rather, we determine whether a reasonable person in the plaintiff's position would be compelled to resign." *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998).

Butler cannot prove a claim of constructive discharge because her argument and supporting evidence are subjective.  In her brief, Butler argues that two factors made the Senior Center intolerable: (1) she felt that the Senior Center was a demotion because she lost her construction-related responsibilities and (2) she suffered from panic attacks while at the Senior Center.  Doc. 21 at 18-20. Butler's feelings on the loss of her construction-related duties are purely subjective; as shown in Butler's statement in her brief that "she was transferred to less favorable working conditions *from her standpoint*." Doc. 21 at 20 (emphasis added). The court is barred from considering "a plaintiff's subjective feelings about his employer's actions," *Doe*, 145 F.3d at 1450, so Butler's first argument fails on its face.

Butler's panic attacks similarly fail because the evidence shows that they were caused by conditions personal to Butler, not by intolerable conditions created by Hoover. Butler testified that she first met with a counselor while still working at the Hoover Met—*i.e.* before she was reassigned to the Senior Center—because she "had a lot of stuff going on, family issues, health-related." Doc. 17-1 at 43.  Regarding the "family issues," Butler testified that her brother had passed away, and she alone was taking leave to care for her ailing mother. *Id.* Any anxiety stemming from these personal issues cannot be attributed to working conditions at the Senior Center, particularly when Butler had yet to begin working there.

Months later, when Butler resigned her employment, she wrote in her resignation email that "due to several personal and work related factors, I can no longer continue my employment." Doc. 17-1 at 133. Shortly before sending that resignation email, Butler told a colleague (by email) that "I'm about to turn in my resignation instead of going on leave of absence because I really need the money in my RSA [retirement account]." Doc. 17-1 at 132. Butler then asked, "How long does it normally take to get that [retirement money] once you resign?" *Id.*

Butler was asked about both emails at her deposition. As for the email to her colleague, Butler explained that she needed the money from her RSA retirement account "because [she] was possibly getting divorced," *Id.* at 39, and that she could not collect that money if she took a leave of absence (rather than resign). *Id.* at 41. Butler explained that the "personal and work related factors" mentioned in her official resignation email both referred to her "mother's passing away, dying." *Id.* at 40. Butler added that, due to her mother's failing health, "I just couldn't go in there another day. It was causing me to have panic attacks at the Senior Center." *Id.* at 40.

Family and financial problems may make any job less tolerable, but Hoover did not create these conditions. They are personal to Butler; they would not apply to some other person put in the same job conditions. Accordingly, the court finds that no reasonable juror could find that Butler's proffered evidence establishes that

working at the Senior Center was so intolerable that a reasonable person would feel compelled to resign.

To the contrary, the evidence shows that—excluding Butler's personal conditions—Butler's employment at the Senior Center was tolerable. In her exit interview, Butler rated her salary, policies, and benefits as "excellent." Doc. 17-1 at 135. She rated her job duties, workload, working conditions, and advancement opportunities as "fair." *Id.* Butler stated that her supervisor was "fair and unbiased" and described their working relationship as "good," *id.*, and Butler described her working relationship with coworkers as "pleasant." *Id.* at 136. Perhaps most telling, Butler stated that she would work at the Senior Center again and would recommend that her friends work there. *Id.*

The only negatives that Butler mentioned were that she did not like working events and in the kitchen, *id.*, and "she did not like being transferred to [the Senior Center] while in FMLA." *Id.* When asked about these comments at her deposition, Butler explained that "[i]t wasn't particularly the job duties. It was just the—it was just lack of responsibility that went along with it after all my years of hard work. Although working in the kitchen was pretty hard on my old body." Doc. 17-1 at 41.

Again, Butler's complaints are subjective and personal to her. The objective evidence points to a tolerable work environment, and no reasonable juror viewing the evidence could find that working conditions at the Senior Center were "so

intolerable that a reasonable person in [Butler's] position would have felt compelled to resign," *Green*, 136 S. Ct. at 1776—particularly when Butler stated that she would recommend others work there.

## CONCLUSION

There is no genuine dispute as to any material fact, and the City of Hoover is entitled to judgment as a matter of law under each of Butler's three theories of FMLA retaliation. Accordingly, the court **GRANTS** Hoover's motion for summary judgment (Doc. 16) and will enter a separate order dismissing the case.

**DONE** this 7th day of July, 2020.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE